UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| STEPHEN HEFFENTRAGER ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 1:04-CV-326/1:03-CR-90 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**M E M O R A N D U M**

Petitioner Stephen Heffentrager ("Petitioner"), an inmate in the federal penal system proceeding *pro se*, has timely filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File No. 1). Petitioner filed a brief in support of his motion (Court File No. 2). Pursuant to the Court's Order (Court File No. 3), the Government filed a response to Petitioner's motion (Court File No. 6). Because the petition fails to set forth grounds sufficient to vacate the sentence, the Court will **DENY** Petitioner's motion to vacate, set aside, or correct his sentence.[1]

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On April 8, 2003 Petitioner was charged, along with three co-defendants, in a one-count indictment with attempting to manufacture methamphetamine in violation of 21 U.S.C. § 846 (Crim.

---

[1] In accordance with Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in Petitioner's § 2255 motion filed herein, which will be cited by the Court File Number assigned to the particular pleading or motion (*e.g.*, "Court File No. 1"), and all the files, records, transcripts, and correspondence relating to Petitioner's conviction in Criminal Docket No. 1:03-CR-90, which will be referred to by the Court File Number assigned to the particular matter in the underlying criminal case (*e.g.*, "Crim. Court File No. 1").

Court File No. 2; Presentence Investigation Report ("PSR") ¶ 1). Petitioner entered into a plea agreement with the Government on July 24, 2003 (Crim. Court File No. 44). Pursuant to the plea agreement, Petitioner pleaded guilty to attempting to manufacture methamphetamine as charged in count one of the indictment (*Id.* at ¶ 1).

> The factual basis in support of the guilty plea provides as follows:
>
> On or about January 11, 2003 in Bradley County, Tennessee, in the Eastern District of Tennessee, Debra Sloan entered a convenience store and stole a quantity of pseudoephedrine. The theft was recorded on the store's video camera. Pseudoephedrine is used to make methamphetamine. On January 27, 2003, officers went to Sloan's Bradley County home to ask about the theft. Debra Sloan came to the door and closed it behind her before the officers could see inside. The officers smelled a strong chemical odor. Debra Sloan said she had been buying "pills" for Aaron Lawson and she confirmed that Lawson had recently blown up a meth lab in Meigs County. She stated that she and her son [Petitioner] bought pills for Lawson. She refused to consent to a search of her home. On February 20, 2003, officers returned to her home with an arrest warrant, and she consented in writing to a search. Officers found items commonly used to make methamphetamine, including HEET, muriatic acid, alcohol, Coleman fuel, hydrogen peroxide, iodine, methanol, lye, and red phosphorous. Officers also found a trash bag full of matches, empty pseudoephedrine blister packs, tubing, and various layered liquids. A person who lives in the same neighborhood as the Sloans would testify to being present when Jason Smith, Debra and Tim Sloan, and [Petitioner] together made methamphetamine in the home. A cooperating coconspirator would testify to the same, that is that Smith, the Sloans, and [Petitioner] cooked methamphetamine together in the home as recently as February 19, 2003.

(*Id.* at ¶ 8).

Before Petitioner was sentenced, a Presentence Investigation Report ("PSR") was prepared. Petitioner was attributed with 226.8 grams of methamphetamine resulting in a base offense level of 28 under United States Sentencing Guidelines Manual ("USSG") § 2D1.1(a)(3) (PSR ¶ 19). However, it was determined Petitioner manufactured methamphetamine in the presence of minors and solicited the help of a minor to commit the underlying offense so his offense level was increased to 36 (PSR ¶¶ 20, 22). The offense level was then reduced by three levels for Petitioner's

2

Case 1:03-cr-00090 Document 81 Filed 05/23/06 Page 2 of 10 PageID #: 8

acceptance of responsibility pursuant to USSG § 3E1.1(a) & (b) (PSR ¶ 25). Petitioner's criminal history category was I (PSR ¶ 32). Thus, the Guideline range for imprisonment was 135 to 168 months (PSR ¶ 44). The maximum statutory term of imprisonment was 20 years. 21 U.S.C. § 841(b)(1)(C).

Petitioner, through counsel, objected to the drug quantity attributed to him and the minor enhancements (Addendum to the PSR). A sentencing hearing was held in Petitioner's case (Crim. Court File Nos. 56, 60, 68). After hearing extensive testimony and arguments from counsel, the Court reduced the drug quantity attributed to Petitioner, resulting in a base offense level of 26 (Crim. Court File No. 80, Sentencing Transcript, pp. 197-98). Petitioner's other objections were either denied or withdrawn (*Id.* at pp. 255, 287-88). Due to the reduction in his base offense level, Petitioner's final Guideline range for imprisonment was 108 to 135 months (*Id.* at 289).

On December 19, 2003 the Court sentenced Petitioner to 122 months imprisonment (Crim. Court File No. 68). A final judgment was entered on January 7, 2004 (Crim. Court File No. 70). Petitioner did not directly appeal his conviction or sentence. He mailed this Petition to vacate, set aside, or correct his conviction pursuant to 28 U.S.C. § 2255 on October 4, 2004 and the Petition was received by the Clerk on October 6, 2004 (Court File No. 1). The Petition was timely filed within the statutory one-year limitation period. 28 U.S.C. § 2255(1).[2]

---

[2] 28 U.S.C. § 2255, provides, in part:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme

3

Having reviewed the materials thus submitted, together with the complete record of the underlying criminal case, the Court finds they conclusively show Petitioner is not entitled to relief on the claims asserted. Accordingly, the Court will decide the matter without an evidentiary hearing, explaining its reasoning as it addresses each of Petitioner's asserted grounds for relief. *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.), *cert. denied*, 508 U.S. 943, 113 S. Ct. 2423, 124 L. Ed. 2d 644 (1993).

## II. DISCUSSION

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside that sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles,* 568 F.2d 1 (6th Cir. 1977); *Mayes v. United States,* 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000).

Where a constitutional error is alleged, in order to obtain relief under § 2255 the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence

---

Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1721-22, 123 L. Ed. 2d 353 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). "To prevail under 28 U.S.C. § 2255, a defendant must show a 'fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process.'" *Gail v. United States*, 21 F.3d 107, 109 (6th Cir. 1994) (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

Petitioner asserts a common claim being raised in these types of proceedings, that is, he was denied ineffective assistance of counsel in violation of the United States Constitution because his lawyer failed to object to judicial fact-finding of the drug quantity attributable to him and the facts underlying the minor enhancements (Court File No. 1, p. 4; Court File No. 2, pp. 5-14). The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S. Ct. at 2064. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F.2d 1073,

1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690, 104 S. Ct. at 2066. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S. Ct. 2574, 2586, 91 L. Ed. 2d 305 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691, 104 S. Ct. at 2066. The *Strickland* test, however, must be adjusted in cases where a defendant has pled guilty instead of being found guilty after a trial. *Thomas v. Foltz,* 818 F.2d 476, 480 (6th Cir.), *cert. denied,* 484 U.S. 870 (1987). To successfully challenge a guilty plea on the ground of ineffective assistance of counsel, Petitioner must show a reasonable probability that, but for counsel's errors, Petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52 (1985); *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996), *cert. denied*, 519 U.S. 1132 (1997); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994); *Sullivan v. United States*, 11 F.3d 573, 576 (6th Cir. 1993); *United States v. Smith*, 981 F.2d 887, 894 (6th Cir. 1992).

The *Strickland* Court further held both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

Petitioner argues his counsel was constitutionally ineffective in failing to object to the drug quantity and minor enhancements on Sixth Amendment grounds, relying on the decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004). "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. As Petitioner was not sentenced beyond the prescribed statutory maximum period of 20 years, Petitioner's counsel was not deficient in failing to raise this claim, nor was Petitioner prejudiced by its omission.

Regarding the *Blakely* allegations of ineffective assistance of counsel, *Blakely* was decided six months after Petitioner's sentence was imposed, and its reasoning applied to the federal Sentencing Guidelines following the January 2005 Supreme Court decision in *U.S. v. Booker*, 543 U.S. 220 (2005). The Sixth Circuit has previously rejected a claim for ineffective assistance of counsel where counsel failed to anticipate and raise an objection based on the subsequent change in law in *Blakely* and *Booker*:

7

> Burgess's trial counsel cannot be deemed ineffective for failing to anticipate the Supreme Court's June 24, 2004 holding in *Blakely* that the Sixth Amendment precluded the imposition of a sentence under Washington state's sentencing system based on facts not found by a jury or admitted by the defendant. See *Blakely*, 124 S.Ct. at 2537-38 (applying *Apprendi*). The Supreme Court had not even agreed to hear the appeal in *Blakely* until over a month after Burgess's sentencing. See *Blakely v. Washington*, 540 U.S. 965, 124 S.Ct. 429, 157 L.Ed.2d 309 (Oct. 20, 2003). Nor can counsel be deemed ineffective for lacking the additional prescience to anticipate that the eventual holding in *Blakely* would lead to the Supreme Court's January 12, 2005 decision in *Booker* to remedy potential Sixth Amendment problems in the application of the federal Sentencing Guidelines by declaring the Guidelines advisory only, *Booker*, 125 S.Ct. at 764-67, particularly because the *Blakely* opinion makes clear that it expresses no opinion on the continuing validity of the federal guidelines, *Blakely*, 124 S.Ct. at 2538 n. 9.

*U.S. v. Burgess*, 2005 WL 1515327, *7 (6th Cir. June 22, 2005) (internal citations omitted).

Similarly, Petitioner's counsel could not have anticipated the holding in *Blakely* or the decision in *Booker*. As such, Petitioner's counsel was not deficient. Also, because the Court chose a reasonable sentence within the Guideline range, Petitioner was not prejudiced by this failure.

Accordingly, the Court will **DENY** Petitioner's claim for relief under *Apprendi* and *Blakely*.

## III. CONCLUSION

For the reasons stated above, the Court holds Petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

The Court must now consider issues that may arise if Petitioner files a notice of appeal. Section 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion.[3] Section 2255 now incorporates the old habeas procedure of issuing or denying a

---

[3] The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions. *Hereford v. United States*, 117 F.3d 949, 951

8

certificate of probable cause, now renamed a certificate of appealability. No § 2255 petitioner may appeal without this certificate. District judges may issue certificates of appealability under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which codifies the standard for issuing a certificate of probable cause originally articulated in *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983). *See Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997). "A certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" *Barefoot*, 463 U.S. at 893, 103 S. Ct. at 3394. *See also* 28 U.S.C. § 2253(c)(2). The standard is perhaps best phrased as follows:

> In requiring a "question of some substance," or a "substantial showing of the denial of [a] federal right," obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are "adequate to deserve encouragement to proceed further."

*Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980) (quoting *United States ex rel. Jones v. Richmond*, 245 F.2d 234 (2d Cir.), *cert. denied*, 355 U.S. 846, 78 S. Ct. 71, 2 L. Ed. 2d 56 (1957)).

In this case, Petitioner's claims are clearly without merit, and he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore **DENIES** a certificate of appealability.

Fed. R. App. P. 24(a) further requires the district court to certify in writing whether the appeal is taken in good faith. For the same reasons the Court denies a certificate of appealability,

---

(6th Cir. 1997); *cf. McGore v. Wrigglesworth*, 114 F.3d 601, 610 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the $105 filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure. *Hereford*, 117 F.3d at 952. If the motion is denied, the prisoner may renew the motion in the appellate court.

9

the Court determines that any appeal in this case would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), any appeal in this matter by Petitioner is not taken in good faith, and he may not proceed on appeal *in forma pauperis*. *United States v. Atkins*, 171 F. Supp. 2d 769 (W.D. Tenn. 2001). No certificate of appealability will issue as Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c).

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**